UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 20-14-DLB-CJS

TRUIST BANK                                                                    PLAINTIFF

v.                                    **MEMORANDUM ORDER**

GERNER & KEARNS CO., L.P.A., et al.                          DEFENDANTS

* * *   * * *   * * *   * * *

This matter is before the Court on Plaintiff's Motion to Interplead IOLTA Account Funds and Other Forms of Payment into the Court's registry and be dismissed from the lawsuit. (R. 36). Previously, the Court held a telephonic Status Conference to discuss Plaintiff's motion and the matter was taken under advisement. (*See* R. 38). Having considered the matter, for the reasons below, Plaintiff's Motion to Interplead will be denied without prejudice.

I.     **Factual and Procedural Background**

A.     **IOLTA Accounts and Collected Payments**

On February 10, 2020, Plaintiff Truist Bank ("Truist"), formerly known as Branch Banking and Trust Company, initiated this action by filing a Complaint for Interpleader, Injunctive Relief, and Other Relief surrounding four IOLTA accounts opened with Truist by Gerner & Kearns Co., L.P.A. ("Gerner & Kearns") and Prism Title & Closing Service, Ltd. ("Prism Title"). (*See* R. 1 at ¶¶ 14-20). The sole owner and operator of Gerner & Kearns Co., L.P.A. and Prism Title was Attorney David Gerner, who passed away on October 8, 2019. (*Id*. at ¶ 19). Specifically, Gerner, on behalf of Defendant Gerner & Kearns, opened the following three IOLTA Accounts: (1) Account No. ****1095 ("Ohio IOLTA Account"); (2) Account No. ****7807 ("Kentucky IOLTA

Account"); and (3) Account No. ****3038 ("Case Aware IOLTA Account").  (*Id.* at ¶ 15-17).  Gerner, on behalf of Defendant Prism Title, opened Account No. ****3011 ("Prism IOLTA Account").  (*Id.* at ¶ 18).  At the time Gerner died, each of these IOLTA accounts had a positive balance.  (*Id.* at Page ID 7).  The Ohio IOLTA Account had an account balance of $15,355.75 as of December 31, 2019.  (R. 1-1).  The Kentucky IOLTA Account had an account balance of $13,627.88 as of December 31, 2019. (R. 1-2).  The Case Aware IOLTA Account had an account balance of $106,780.60 as of December 31, 2019.  (R. 1-3).  Finally, the Prism IOLTA Account had an account balance of $32,183.60.  (R. 1-4).  In total, there was $167,947.83 in the four IOLTA accounts at calendar year end 2019.  Gerner & Kearns and Prism Title ceased business operations after Gerner's death.  (R. 1 at ¶ 18).

In addition to the four IOLTA accounts, Truist also avers that it has collected a large number of checks and other forms of payment sent to the address of the former offices of Gerner & Kearns and Prism Title, which payments have not been deposited into any accounts and are believed to be monies owed to third parties.  (R. 1 at ¶ 24).  In a separate but related case, Truist filed a lawsuit against Gerner & Kearns and Prism Title to collect on loan promissory notes that the Defendants had defaulted on since Gerner had passed away.[1]  (*Id.* at ¶ 22); *see also Branch Banking and Trust Company v. Gerner & Kearns Co., LPA, et al.*, No. 2:19-cv-161-DLB-CJS, at R. 1 (E.D. Ky. Nov. 8, 2019).  Truist avers that because of its status as a mortgage lender over the real property where Gerner & Kearns and Prism Title operated their businesses, Truist has been preserving and protecting the two properties (and collecting the payments sent to these properties) in accordance with the terms of the mortgages and applicable law.  (R. 1 at ¶ 23).  Truist explained that:

---

[1] The other lawsuit also named Rebel Properties, LLC as a defendant, but Rebel Properties, LLC has not been named as either a defendant or a claimant in this matter.

2

> Since taking possession of the Offices on November 13, 2019, Trust has been
> collecting mail and other correspondences delivered to the Offices. This includes,
> but is not limited to a large number of checks, money orders and other forms of
> payment for unknown purposes addressed to Gerner & Kearns, Prism Title &
> Closing Services, countless individuals and business[es] which are unknown to
> Truist (collectively, received or to be received, the "Form of Payment"). Truist has
> been collecting the Form of Payment but has not taken any other action relating
> thereto and so as to avoid any confusion[,] Truist has not negotiated or otherwise
> remitted to any person any Form of Payment.

(*Id.* at ¶ 24). Moreover, Truist averred that it "reasonably expects to receive other Forms of

Payment for the foreseeable future." (*Id.* at ¶ 25). Mark Rubin has since been appointed as the

Receiver over the real and personal property of Gerner & Kearns and Prism Title. *See Branch*

*Banking and Trust Company*, No. 2:19-cv-161-DLB-CJS, at R. 27 (E.D. Ky. Feb. 24, 2020). As

part of the Order Appointing Receiver, Rubin assumed control over "inventory and personal

property of any kind located at or on said premises[.]" *Id.* at ¶ 3(a). At a September 14, 2021

Status Conference, Truist informed the Court that Rubin has since received additional forms of

payment, all of which are being maintained at Dinsmore & Shohl. (*See generally* R. 38).

### B.    Named Claimants

Truist avers that, with Gerner & Kearns and Prism Title ceasing operations, Truist started

receiving inquiries about the IOLTA account funds. Truist has been contacted by Attorney David

Hoff on behalf of a client, by a William L. Rosenthal, and by the United States Department of

Agriculture ("USDA") (collectively "claimants") about monies that were placed in one or more of

the IOLTA accounts. (*Id.* at ¶¶ 20A, 20B, and 20C). At the September 14, 2021 Status

Conference, Truist stated that no other interested parties have come forward to make a claim. (*See*

*generally* R. 38).

As to the identified claimants, Truist filed with its Complaint documents that assert their

alleged interests. (*See* R. 1-5; R. 1-6; R. 1-7). First, Truist has not provided any documents to

show that Gerner & Kearns or Prism Title have or will make a claim to any of the monies in the IOLTA accounts or collected payments.

Second, Truist filed with its Complaint a copy of a letter from Attorney Genevieve Campbell requesting that Truist re-issue a check to William Rosenthal for $6,753.05. (R. 1-6). Attorney Campbell's letter explained that she received an email from William Rosenthal, who threatened to file a bar complaint against her if Attorney Campbell did not return $6,735.05 from funds possessed by Gerner & Kearns. (*Id.*). Attorney Campbell explained that William Rosenthal had received a $6,735.05 check from Gerner & Kearns on November 9, 2019, that was dated for February 28, 2019. (*Id.*). However, when William Rosenthal inquired with Truist about the check, he was told that Truist could not honor the check. (*Id.*). Attorney Campbell stated that she used to be employed by Gerner & Kearns, but her employment was terminated several months before Gerner died. (*Id.*). Attorney Campbell also tendered a copy of the email she received from William Rosenthal. (*See id.*).

On March 18, 2020, Rosenthal filed a *pro se* Answer, where he explained that he had retained Gerner & Kearns to recover funds related to a certificate of judgment in Hamilton County, Ohio. (R. 16 at ¶ 21). Rosenthal states that Gerner & Kearns recovered $10,347.23 against that judgment debt. (*Id.*). That recovery was placed in an IOLTA account. (*Id.*). Rosenthal states that $348.47 was subtracted from this fund by the Hamilton Clerk of Court as a fee, Gerner & Kearns withdrew $3,254.71 for the fee Rosenthal owed to the law firm, and Rosenthal was sent a stale check for $6,735.05. (*Id.* at ¶¶ 20, 21-24). Thus, Rosenthal requests that the Court interplead the $6,735.05 that he says is owed from Gerner & Kearns from its IOLTA accounts. (*Id.* at ¶¶ 26-27).

Third, Truist attached with its Complaint a motion to compel from an Ohio state court action that it received from Attorney David Hoff, a creditor's attorney, seeking to collect on an

4

agreed judgment one Ann Shipley had entered into with Snyder Funeral Home (R. 1-5). Under the agreed judgment, Shipley was required to make payments to Gerner & Kearns, the law firm that represented Snyder Funeral Home at that time. (*Id.*). Truist attached a copy of the check that Shipley allegedly sent Gerner & Kearns pursuant to the agreed judgment on October 23, 2019, in the amount of $300.00.[2] (*Id.* at Page ID 26). The motion to compel identified account ****7807, the Kentucky IOLTA Account, as the account where this money was deposited. (*Id.* at Page ID 24). The motion to compel concludes by explaining that Attorney Hoff has reached out to Truist about distributing the money, but Truist has not rendered payment. (*Id.* at Page ID 24-25). Though a summons was returned executed against Shipley on May 20, 2020 (R. 27), Shipley has not filed an Answer or otherwise participated in this matter.

Fourth, Truist filed with its Complaint a copy of an email it received from the USDA. (R. 1-7). The email explained that Gerner & Kearns foreclosed a property for the USDA, and the USDA had given Gerner & Kearns purchase funds to accomplish the foreclosure. (*Id.* at Page ID 33). The purchase funds were to be distributed to 1st Source Bank to satisfy a lien with the remaining balance to be returned to USDA. (*Id.*). Unfortunately, however, the checks were mixed up, and the USDA received the funds that 1st Source Bank was supposed to receive, and 1st Source Bank received the funds that USDA was supposed to receive. (*Id.*).

The USDA's Answer states that it returned the check that was mistakenly sent to Gerner & Kearns. (R. 23 at ¶ 20(C)(i)). According to the USDA, that check has not been forwarded to 1st Source Bank, and the $14,177.62 still owed to the USDA remains in one or more of the IOLTA accounts. (*Id.*). Moreover, the USDA alleges that it is also entitled to $74,925.00 because this amount was given to Gerner & Kearns to bid on property at a foreclosure. (*Id.* at ¶ 20(C)(ii)).

---

[2] The record is not clear on whether more than this $300.00 is at issue.

However, while the foreclosure sale was unsuccessful for the USDA, the $74,925.00 has not been returned. (*Id.*). Thus, the USDA claims that it is entitled to receive $89,102.62 from funds in one or more of the IOLTA accounts. (*Id.* at ¶ 20C).

### C.   Procedural History

Truist filed its Complaint against Defendants Gerner & Kearns, Prism Title, Rosenthal, Shipley, the USDA, and unknown claimants to the IOLTA accounts and collected payments, seeking to: (1) declare the competing rights of the named-defendants for certain funds held by Truist; (2) issue an injunction against any party who initiates an action against Truist relating to the IOLTA accounts or collected payments, and (3) authorize Truist to provide the funds at issue into the Court's registry. (*See* R. 1 at Page ID 1). Initially, Truist took the position that it might have an interest in some of the funds in the IOLTA accounts or the collected payments. (*Id.* at Page ID 7, n.1). Then, later, in its Motion for Interpleader Deposit, Truist asserted that it is a disinterested stakeholder for the funds contained in the IOLTA accounts and the collected payments. (R. 36 at Page ID 182). Thus, Truist is asking the Court to receive the funds in the IOLTA accounts and collected payments in its Registry and allow Truist to be dismissed from this matter without further action or obligation. (*Id.* at Page ID 179).

After Truist filed its Complaint in this Court, Truist had summonses issued to Gerner & Kearns, Prism Title, Rosenthal, Shipley, and the USDA. (*See* R. 5; R. 6; R. 7). The summonses were returned executed against the USDA (R. 9; R. 11), Rosenthal (R. 13), and Shipley (R. 27). [3]

---

[3] Although Shipley has been named as a claimant in this matter, it is not clear that she is an appropriate claimant. The Complaint provides that "the Defendant, Ann C. Shipley, is an individual residing and/or doing business in the State of Ohio served through her attorney, David Hoff, Esq." (R. 1 at ¶ 6). Moreover, paragraph 20A provides that Truist has received communications from Attorney Hoff "on behalf of his client Ann C. Shipley." The summons was sent to Attorney Hoff (R. 14); however, Attorney Hoff filed a Motion to Correct Record and Notice of Non-Service. (R. 18). Attorney Hoff's Motion clarified that he actually represents Snyder Funeral Home, a creditor seeking to collect payment from Shipley. (*Id.* at Page ID 120).

6

The summons for Prism Title was returned executed via personal service to Maureen Gerner, widow of David Gerner, who was also an officer or agent of Prism Title. (R. 10). But the summons for Gerner & Kearns was returned as undelivered and unclaimed. (R. 28). A Status Conference was held in this case on November 24, 2020, to discuss next steps for this litigation, though more questions than answers were raised at the conference. (*See* R. 35). Then, on June 17, 2021, Truist filed a Motion to Interplead IOLTA Account Funds and Other Forms of Payment. (R. 36). Another Status Conference was held on September 16, 2021, to discuss the substance of Truist's Motion to Interplead following which the Motion was taken under advisement. (R. 38.). After consideration, and as explained below, Truist's Motion must be denied.

## II.   Analysis

"Interpleader is an equitable proceeding that "'affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding.'" *United States v. High Tech. Prod., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (quoting 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1704 (3d ed. 2001)). As such, "[t]he primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder ... is whether the stakeholder legitimately fears multiple vexation directed against a single fund [or property]." *Id*. at 642 (quoting 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1704 (3d ed. 2001)). The party in control of the contested property is called the "stakeholder" and the parties seeking to obtain the property are called the "claimants." When the stakeholder makes no claim on the contested property and is willing to release it to the rightful claimant, then the stakeholder will generally

deposit the funds in the court's registry and move to withdraw from the proceeding, leaving the claimants to litigate among themselves about who the rightful owner of the property is. *Id.*

Interpleader actions generally process in two stages. *See id.* at 641. "During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader." *Id.* (citing 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1704 (3d ed. 2001)). During the second stage, "the court determines the respective rights of the claimants to the fund or property at stake via normal litigation process, including pleading, discovery, motions, and trial." *Id.*

This action is presently in the first stage. The Court held an initial in-person Status Conference on November 24, 2020, to discuss, among other issues, how Truist was going to proceed in this matter. (*See generally* R. 35). Truist explained that it reached out to various bar associations seeking guidance on how to handle the funds in the four IOLTA accounts and collected payments. (*Id.*). When Truist did not receive an answer from the bar associations about this issue, and when it began receiving demands from some claimants, it brought this action to name the current claimants that it knows and then bring in any remaining claimants that wish to assert an interest in any of the funds at a later time. (*Id.*). Notably, Truist recognized that there was no clear answer on how to proceed going forward. (*Id.*). Now, Truist has filed a Motion to Interplead, asking the Court to allow it to deposit funds into the Court's registry and allow it to exit this matter without requiring any further action on its part. (R. 36).

The Court held a subsequent Status Conference to discuss concerns about Truist's Motion. (R. 38). At that Status Conference, the Court pointed out the lack of authority provided in a

situation such as this, where, unlike in traditional interpleader actions, Truist is asking the Court to take over the obligation of identifying claimants and dispersing the funds. (*Id.*). Thus, this case is before the Court to determine if Truist has properly invoked interpleader.

Interpleader actions can be brought in federal court under either the Federal Interpleader Act, 28 U.S.C. § 1335, also referred to as "statutory interpleader," or under Federal Rule of Civil Procedure 22, also referred to as "rule interpleader." *See Mudd v. Yarbrough*, 786 F. Supp. 2d 1236, 1241 (E.D. Ky. 2011). The distinction between the two lies in the court's subject matter jurisdiction. *Id.* "[U]nlike the interpleader statute which grants district courts original jurisdiction, the interpleader rule is merely a procedural device and does not grant this Court subject matter jurisdiction." *Id.* (quotations omitted). Instead, it must fall within one of the general statutory grants of federal jurisdiction. *Id.* Truist's Motion appears to identify statutory interpleader as the avenue it is proceeding under in this matter.[4] (*See* R. 36 at Page ID 180).

Statutory interpleader grants "original jurisdiction of any civil action of interpleader or in the nature of interpleader" if three elements are met. 28 U.S.C. § 1335(a). First, the amount in controversy must exceed $500. *Id.* Second, there must be two or more adverse claimants contesting the stake who have minimal diversity jurisdiction when the stakeholder is disinterested. 28 U.S.C. § 1335(a)(1); *see State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530-31 (1967).

---

[4] Truist's Complaint seems to suggest that rule interpleader would also be proper because it avers that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 since Truist is diverse from the named Defendants. (*See* R. 1 at ¶ 11). Unlike statutory interpleader, which vests original jurisdiction to the Court, rule interpleader requires either diversity jurisdiction or federal question jurisdiction. *See Bell & Beckwith v. United States*, 766 F.2d 910, 914 (6th Cir. 1985). Since Truist alleges that it is diverse among the named Defendants, it argues that this Court has subject matter jurisdiction under 28 U.S.C. § 1332. Rule 22 therefore acts as a procedural device and provides that "[p]ersons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability." Fed. R. Civ. P. 22(1). Nevertheless, "[a]s the language of Rule 22 makes clear, '[a] prerequisite for permitting interpleader is that two or more claimants must be 'adverse' to each other.'" *See High Tech. Prod., Inc.,* 497 F.3d at 642.

Third, the stake must be deposited into the Court's registry.  28 U.S.C. § 1335(a)(2).  The first element is not at issue because Truist has identified monies that exceed well over $500, and the third element is not at issue as Truist has moved to deposit the funds into the Court's registry. Thus, the question before the Court is whether Truist has established that there are two or more adverse claimants contesting the stake.

The Sixth Circuit has found that the "primary test" for determining whether interpleader is appropriate is to consider "whether the stakeholder legitimately fears multiple vexation directed *against a single fund or property*."  *High Tech. Prod.*, *Inc.,* 497 F.3d at 642 (emphasis added). This means that multiple claimants must present competing claims for the same identifiable products.  *Id.*

Truist's Complaint stated originally that Truist might have an interest in certain funds from the IOLTA accounts or the payments sent to the former offices because of Truist's potential security interest in the accounts receivable of Gerner & Kearns and Prism Title pledged as collateral for the loans Truist provided the businesses.  (R. 1 at ¶ 26 n.1).  However, later in the Complaint, Truist avers that it "has no interest in the IOLTA Accounts."  (*Id.* at ¶ 29).  At the September 14, 2021 Status Conference, Truist clarified that is does not have an interest in the funds in the IOLTA accounts or the collected payments because it does not have a security interest in the monies since the monies are owed to third parties; essentially that an IOLTA account in its purest form is generally money held for another, although attorney expenses and fees could be encompassed within an IOLTA account.  (*See generally* R. 38).  Truist's Complaint states that:

> Based on Truist's inability to identify the rightful owner of the funds contained in the IOLTA Accounts or rightful recipient or owner of the Form of Payments received and to be received, Truist has commenced the within action to interplead the funds in the IOLTA Accounts and Form of Payment received and to be received hereafter and to have the Court determine the parties' rights thereto.

10

(*Id.* at ¶ 27).

Truist filed this interpleader action identifying Shipley, Rosenthal, and the USDA as individuals and entities that had business dealings with Gerner & Kearns and Prism Title that "are adverse or potentially adverse to one another." (R. 36 at Page ID 181). In its Motion, Truist states that there are other unidentified claimants for the remaining balance in the IOLTA accounts and the collected payments currently within Truist's custody. (*Id.* at Page ID 181-82). Truist submits that it "would be improper and unfair to request or expect Truist Bank, a disinterested stakeholder, to have to attempt to determine the rightful owner of the Funds contained in the IOLTA Accounts or rightful recipients or owner of the Form of Payment." (*Id.* at Page ID 182).

Although none of the named Defendants have filed responses in opposition to Truist's motion, Truist must still show that it has met the requirements for interpleader. Thus, the question is whether Truist has alleged facts to allow the Court to find that interpleader has been properly invoked when it appears that the named claimants are not adverse. In the normal course of interpleader, stakeholders possess money or property that belongs to another, but two or more parties are asserting mutually exclusive claims to that property or fund. *See, e.g., Tashire*, 386 U.S. at 526 (insurance agency produced automobile insurance funds for competing claims by injured claimants); *High Tech. Prod., Inc.*, 497 F.3d at 640 (United States possessed isotopes with competing claims by three claimants); *Mudd*, 786 F. Supp. 2d at 1241 (insurance agency produced life insurance funds for competing claims made by beneficiaries). The underlying policy for interpleader actions was designed to protect stakeholders. *See* 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1702 (3d ed. 2001). In fact,

> [t]he protection afforded by interpleader takes several forms. Most significantly, it prevents the stakeholder from being obliged to determine at his peril which claimant has the better claim, and, when the stakeholder has no interest in the fund, forces the claimants to contest what essentially is a controversy between them

11

without embroiling the stakeholder in litigation over the merits of the respective claim.

*Id.*

Although Truist argues that it would be improper and unfair to require it locate the rightful claimants to the funds, Truist has not shown that claimants have or will make competing claims to the same funds in its possession. *See High Tech. Prod.*, *Prod., Inc.*, 497 F.3d at 642. As it stands, Truist has identified a total of $167,947.83 in the four IOLTA accounts. (*See* R. 1-1; R. 1-2; R. 1-3; and R. 1-4). The named claimants combined only allegedly make a claim to less than $100,000 of different monies in the IOLTA accounts. Even with more claimants allegedly in existence, it does not appear that the claimants are adverse to one another; in other words, it has not been shown that there are competing claims for the same property in the IOLTA accounts. Ultimately, it appears that Truist wants to deposit the IOLTA accounts and collected payments into this Court's Registry and have this Court identify the proper owners without further action on Truist's part. But, without more authority and facts, it is not clear how the named claimants are adverse.

In sum, Truist seeks not only to interplead funds to the Court for the identified claimants, but also asks this Court to hold the remaining account funds and other forms of payment received for claimants who may later be identified or come forward. Perhaps Truist is asking for the Court to see that notice to the unknown claimants is given and allow Truist to exit this interpleader action without further responsibilities related to the accounts. Put simply, it appears by this Motion that Truist seeks to have this Court do what it does not want to have to do itself or, at minimum, to walk away and put in the Court's hands how best to deal with the funds and forms of payment received. This poses many concerns for the Court. While not unsympathetic to Truist's dilemma, Truist has not cited any authority calling for a court to take on such an obligation. Thus, Truist's Motion will at this time be denied without prejudice. A different course to draw the case to

12

conclusion is necessary unless Truist can somehow establish for the Court that there are actual competing claims to the same monies that require the Court's adjudication.

## III.    Conclusion

Accordingly, **IT IS ORDERED** that:

1)      Truist's Motion to Interplead IOLTA Account Funds and Other Forms of Payment (R. 36) is hereby **denied without prejudice**; and

2)      no later than **April 29, 2022,** Truist shall file a Status Report informing the Court how it intends to proceed with advancing this case.

Dated this 31st day of March, 2022.



Signed By:

*Candace J. Smith*

United States Magistrate Judge

J:\DATA\Orders\civil cov\2020\20-14-DLB order RE Interpleader final.docx

13